IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

ROBERT MONTANEZ,
   Plaintiff,
vs.          Case No. 3:11cv65/MCR/EMT

MICHAEL J. ASTRUE,
Commissioner of the Social Security Administration,
   Defendant.
_____/

## REPORT AND RECOMMENDATION

   This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Local Rules 72.1(A), 72.2(D) and 72.3 of this court relating to review of administrative determinations under the Social Security Act ("Act") and related statutes, 42 U.S.C. § 401, *et seq.*  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Act for review of a final determination of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Act, 42 U.S.C. §§ 401–34, and for Supplemental Security Income ("SSI") benefits under Title XVI of the Act, 42 U.S.C. §§ 1381–83.

   Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

I.  PROCEDURAL HISTORY

   On July 17, 2007, Plaintiff filed applications for DIB and SSI, and in both applications he alleged disability beginning October 6, 2006, although he subsequently amended his alleged onset date to May 18, 2008 (Tr. 19).[1]  His applications were denied initially and on reconsideration, and

---

[1] All references to "Tr." refer to the transcript of Social Security Administration record filed on April 8, 2011 (Doc. 10).  Moreover, the page numbers refer to those found on the upper right-hand corner of each page of the transcript, as opposed to those assigned by the court's electronic docketing system.

thereafter Plaintiff requested a hearing before an administrative law judge ("ALJ").  A hearing was held on September 30, 2009, and on October 15, 2009, the ALJ issued a decision in which she found Plaintiff "not disabled," as defined under the Act, at any time through the date of her decision (Tr. 19–26).  On December 9, 2010, the Appeals Council denied Plaintiff's request for review (Tr. 8–11).  Thus, the decision of the ALJ stands as the final decision of the Commissioner, subject to review in this court.  Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1262 (11th Cir. 2007).  This appeal followed.

II.     FINDINGS OF THE ALJ

        On October 15, 2009, the ALJ made the following findings relevant to the issues raised in this appeal (Tr. 19–26):

>    1)    Plaintiff meets the insured status requirements of the Act through December 31, 2013.
>
>    2)    Plaintiff has not engaged in substantial gainful activity since May 18, 2008, the amended alleged onset date.
>
>    3)    Plaintiff's severe impairments include low back pain with radiculitis, neck pain, mild carpal tunnel syndrome of the right arm, and vertigo, but no impairment—alone or in combination—meets or equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.
>
>    4)    Plaintiff has the residual functional capacity ("RFC") to perform light work, as long as he is able to change positions after two hours.[2]
>
>    5)    Plaintiff is able to perform his past relevant work as a warehouse manager and shipping order clerk, since this work does not require the performance of work-related activities precluded by Plaintiff's RFC.  Plaintiff, therefore, was not under a disability, as defined in the Act, from May 18, 2008, through October 15, 2009.

---

[2] Light work is defined as follows:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b) and 416.967(b).

III.    STANDARD OF REVIEW

Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a result of the application of proper legal standards.  Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."); *see also* Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).  "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles."  Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds as stated in* Elam v. R.R. Ret. Bd., 921 F.2d 1210, 1214 (11th Cir. 1991).  As long as proper legal standards were applied, the Commissioner's decision will not be disturbed if in light of the record as a whole the decision appears to be supported by substantial evidence. 42 U.S.C. § 405(g); Falge, 150 F.3d at 1322; Lewis, 125 F.3d at 1439; Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995).  Substantial evidence is more than a scintilla, but not a preponderance; it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)); Lewis, 125 F.3d at 1439.  The court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted).  Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).

The Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do her previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Id*. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)–(g),[3] the Commissioner analyzes a disability claim in five steps:

1.      If the claimant is performing substantial gainful activity, he is not disabled.

2.      If the claimant is not performing substantial gainful activity, his impairments must be severe before he can be found disabled.

3.      If the claimant is not performing substantial gainful activity and he has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if his impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.      If the claimant's impairments do not prevent him from doing his past relevant work, he is not disabled.

5.      Even if the claimant's impairments prevent him from performing his past relevant work, if other work exists in significant numbers in the national economy that accommodates his residual functional capacity and vocational factors, he is not disabled.

The claimant bears the burden of establishing a severe impairment that keeps him from performing his past work.  20 C.F.R. § 404.1512.  If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.  MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, the claimant must then prove he cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

IV.    PLAINTIFF'S PERSONAL AND MEDICAL HISTORY

A.      Personal History

Plaintiff was born on October 31, 1963, and thus was forty-four years of age on the amended onset date (Tr. 403).  He has a high school education and past relevant work as a material handler,

---

[3] In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI, but separate, parallel statutes and regulations exist for DIB and SSI claims (see 20 C.F.R. §§ 404, 416).  Therefore, hereinafter, citations in this Report should be considered to refer to the appropriate parallel provision.  The same applies to citations of statutes or regulations found in quoted court decisions.

food distributor, insulation worker apprentice, tractor-trailer truck driver, warehouse manager, and shipping order clerk (Tr. 403, 416–17).  He worked through mid-May 2008 (*see* Tr. 404, 418).

      B.      Relevant Medical History — Physical

      <u>Evidence that Pre-Dates May 18, 2008 (the Amended Onset Date)</u>

In December 2005, Plaintiff "pulled something in his back" (Tr. 134).  He was assessed with acute strain of the right thoracic back and prescribed a muscle relaxant and anti-inflammatory medication (Tr. 135).  Plaintiff also, apparently, was cleared to return to work as a truck driver *(see, e.g.*, Tr. 102, 125).  In October 2006, while working as an insulation installer, Plaintiff injured himself on the job when he reached forward to secure an insulation roll that was falling off his shoulder (*see* Tr. 151, 159).  Cervical and lumbar spine x-rays revealed no abnormalities, and a thoracic spine x-ray revealed mild anterior wedging at T-10 but was otherwise normal (Tr. 141–42, 147, 153).  Plaintiff was assessed with back pain and initially restricted to light duty work by D. Patrick Spruce, M.D. (*see* Tr. 150–51).  A January 2007 magnetic resonance imaging scan ("MRI") of the thoracic spine revealed a slight disc protrusion at T7-T8 with very slight effacement (Tr. 152).  During follow-up visits in January, February, March, and May 2007, Stephen A. Slobodian, M.D., opined that Plaintiff achieved maximum medical improvement (as of March 13, 2007), and he released Plaintiff to light to medium-range work "on an indefinite basis" (Tr. 154–59).

Between May and July 2007, Plaintiff underwent intravenous antibiotic therapy for an infection in his lower right leg, which was originally diagnosed as cellulitis but later determined to be a methicillin-resistant staphylococcus aureus ("MRSA") infection (*see* Tr. 167–69, 172–237).  Plaintiff tolerated the infusion treatments well (*see, e.g.*, Tr. 175–77, 188), and wound rechecks showed that redness and swelling were "almost completely resolved" by early June 2007 (*see* Tr. 207).  Additionally, during Plaintiff's treatment for the MRSA infection, he was also physically examined on several occasions.  Treatment notes reflect that deep tendon reflexes were normal and that Plaintiff's back was normal and non-tender (*see, e.g.*, Tr. 218, 228, 233).

Plaintiff presented to Purushottam K. Garg, M.D., a family healthcare practitioner, in July 2007 (*see* Tr. 247).[4]  Treatment notes from July, August, and September 2007 generally reflect

---

    [4] Plaintiff apparently saw Dr. Garg prior to July 2007, because a treatment record dated July 2, 2007—the earliest record in the file from Dr. Garg—states that Plaintiff presented "with <u>new</u>" complaints, which suggests Plaintiff had previously seen Dr. Garg (*see* Tr. 247) (emphasis added).

normal physical examinations, with the exception of some tenderness and decreased range of motion in the thoracic and lumbar spine; the notes also include assessments of mid back pain, lower back pain, headaches, neck pain, and insomnia (*see, e.g.*, Tr. 241, 245).   After Plaintiff apparently reported some numbness in the right upper extremity (*see* Tr. 242), Dr. Garg ordered a cervical spine MRI, which was obtained on August 11, 2007, and deemed unremarkable (Tr. 238).

Bennie Cummins, a non-examining agency consultant, whose credentials are not apparent from the record, completed a Physical RFC Assessment on October 15, 2007 (Tr. 271–78).   He opined in relevant part that Plaintiff can occasionally lift or carry twenty pounds and frequently lift or carry ten pounds; stand, sit, or walk six hours in an eight-hour workday; and push or pull without limit (Tr. 272).   He noted his opinions were based in part on the essentially normal MRIs, x-rays, and physical examinations by Dr. Garg (*see* Tr. 272–73).   John A. Dawson, M.D., completed a Physical RFC Assessment on January 23, 2008 (Tr. 297–304).   He reached identical conclusions (*see id.*).

Beginning in October 2007 and continuing through February 2008, Dr. Garg's treatment notes reflect diagnoses of mid back pain, lower back pain, right wrist pain, headaches, neck pain, and "insomnia anxiety" (Tr. 305–15).   Physical examinations continued to yield essentially normal results, with the exception of some tenderness and decreased range of motion in the spine (*see id.*).   In March 2008, in addition to his prior diagnoses, Dr. Garg added a new diagnosis of left ankle pain with tenderness, and he altered the diagnosis of lower back pain to lower back pain "with radiculopathies" (*see* Tr. 341–42).

Evidence that Post-Dates May 18, 2008 (the Amended Onset Date)

In June, August, September, October, November, and December 2008, as well as January, February, March, April, and May 2009, Dr. Garg continued to generally diagnose Plaintiff as he did in March 2008 (*see*  Tr. 333–40, 364–374A), although he occasionally included other diagnoses (*see, e.g.*, Tr. 328, 327 (including left trapezious muscle strain), Tr. 327 (including tobacco abuse)).   Additionally, physical examinations yielded essentially the same results as before but occasionally yielded additional results, such as left trapezious muscle tenderness or right wrist tenderness (*see, e.g.*, Tr. 340, 329, 328, 327).

An MRI of the left ankle, obtained in August 2008, revealed small joint effusion but was otherwise normal (Tr. 330).  Nerve conduction studies ("NCS") of the right hand obtained in September 2008 revealed mild carpal tunnel syndrome, and Plaintiff was advised to wear a wrist splint at night (Tr. 322–23).

On February 6, 2009, Dr. Garg completed a Physical Capacities Evaluation and a Clinical Assessment of Pain (Tr. 344–45).[5]  As to Plaintiff's capacities, Dr. Garg indicated that Plaintiff can lift or carry twenty-five pounds occasionally, ten pounds frequently, and five pounds continuously (Tr. 344).  Additionally, he opined that Plaintiff can sit two hours at a time and three hours, total, in an eight-hour workday and "stand/walk (combined)" two hours at a time and four hours, total, in an eight-hour workday (id.).  Continuing, Dr. Garg opined that Plaintiff is not limited in the use of his left hand and right foot, but is limited to an unspecified extent in:  (1) the use of his right hand, in activities such as pushing or pulling arm controls or performing fine manipulation;[6] and (2) the use of his left foot, in activities such as pushing or pulling leg controls (id.).  He also stated Plaintiff can occasionally bend, squat, climb, and reach but never crawl  (id.).  Finally, Dr. Garg opined that Plaintiff is totally restricted as to moving machinery, mildly restricted as to unprotected heights, and without restriction as to dust, fumes, or gases (id.).[7]  On the pain assessment, Dr. Garg selected responses indicating that Plaintiff's pain is present to such an extent as to be distracting to the adequate performance of work activities, and that side effects of his medication can be expected to be severe and limit Plaintiff's effectiveness due to distraction, inattention, drowsiness, etc. (Tr. 345).

Plaintiff's file contains additional medical records from Dr. Garg through September 2009 (see Tr. 353–74).  The records are essentially the same as before, with a few exceptions.  For

---

[5] Because the Physical Capacities Evaluation is highly relevant to the issues in this appeal, yet somewhat difficult to decipher, it is attached to this Report.

[6] It appears that Dr. Garg indicated both that Plaintiff "can" and "cannot" use his right hand for pushing and pulling arm controls, although it may be that he accidentally marked the "can" box, attempted to scratch out this mark, and then marked the "cannot" box (see Tr. 344).  Similarly, Dr. Garg appears to have marked boxes indicating both that Plaintiff "can" and "cannot" use his right hand for fine manipulation, although the "cannot" mark is more prominent (id.).  Thus, his opinion regarding Plaintiff's use of the right hand is not entirely clear.

[7] Dr. Garg did not indicate whether Plaintiff is restricted as to driving (see Tr. 344).  With regard to "exposure to marked changes in temperature and humidity," Dr. Garg indicated both that Plaintiff is "totally" restricted and "mildly" restricted (id.).

example, Dr. Garg first diagnosed Plaintiff with benign positional vertigo in mid-May 2009 (Tr. 362), which diagnosis was repeated in the treatment notes from June, July, August, and September 2009 (Tr. 361, 359, 358, 356, 355, 353).  Additionally, Plaintiff was occasionally assessed with gastritis (*see, e.g.*, Tr. 353, 355).  During visits in August and early September 2009, Plaintiff asserted new  complaints of lower back pain "going into his left leg," which prompted Dr. Garg to order a lumbar spine MRI (*see, e.g.*, Tr. 355–56).  The MRI was obtained on September 17, 2009, and revealed degenerative changes but no significant spinal canal or neural foraminal narrowing (Tr. 376).  Finally, while under Dr. Garg's care, Plaintiff was prescribed various medications, including pain relievers, muscle relaxants, sleeping aids, and Valium, as discussed below in greater detail.

C.    Relevant Medical History — Mental
      (All Evidence Pre-Dates May 18, 2008 (the Amended Onset Date))

When Plaintiff was receiving treatment for the MRSA infection, between May and June 2007, it was noted that he displayed a normal affect, reported no psychiatric history, and/or reported no depression (*see, e.g.*, Tr. 212, 218, 224, 228, 232).

On September 28, 2007, Plaintiff underwent a consultative psychological evaluation by John F. Duffy, Ph.D. (Tr. 250–52).  Plaintiff advised Dr. Duffy that he saw a counselor "a few times when he was a child" but otherwise had no mental health treatment (Tr. 250).  Plaintiff stated he graduated from high school and had no learning or behavioral problems while in school (Tr. 251).  Plaintiff noted he was able to care for himself and an infant, drive, and manage finances, and he reported he was primarily limited due to physical problems, not emotional problems, although he reported experiencing some stress, loss of interest in some activities he previously performed, and personal difficulties related to his mother and a daughter (*see* Tr. 250–51).  A mental status examination revealed a depressed mood, "somber and sad" affect, and some deficits with regard to immediate memory, but the examination otherwise yielded normal results (e.g., in areas such as speech and language, thought processing, attention, intelligence, judgement, proverb interpretation, immediate attention, insight, and general memory) (*see* Tr. 251).  Dr. Duffy assessed a Global Assessment

Functioning ("GAF") score of 60,[8] as well as moderate major depressive disorder, without psychosis, and he indicated that Plaintiff's prognosis for improvement was "fair" (Tr. 252). Additionally, Dr. Duffy noted that Plaintiff had never taken antidepressant medication, and he encouraged Plaintiff to talk with his physician about prescribing such medication to help with pain and depressive symptoms (*id.*).  Finally, Dr. Duffy opined that Plaintiff would be competent to manage benefits and that Plaintiff's mood difficulties created some moderate limitations in social relationships and in his ability to tolerate stress "at this point in time" (*id.*).[9]

Judith Meyers, Psy.D., a non-examining agency consultant, completed a Psychiatric Review Technique form ("PRTF") and Mental RFC Assessment ("Mental RFCA") on October 15, 2007 (Tr. 253–70).  She evaluated Plaintiff's condition under Section 12.04 of 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Affective Disorders").  She found, based largely on a review of Dr. Duffy's report (*see* Tr. 265), that Plaintiff had a medically determinable impairment—major depressive disorder, moderate, without psychosis—but it did not satisfy the diagnostic criteria necessary to qualify as disabled under Section (or "Listing") 12.04 (Tr. 256, 265).  More specifically, Dr. Meyers opined that Plaintiff's impairment caused no restrictions of activities of daily living, no difficulties in maintaining concentration, persistence or pace, no extended episodes of decompensation, and only moderate difficulties in maintaining social functioning (Tr. 263, 265).  On the Mental RFCA, Dr. Meyers rated Plaintiff's functional limitations in twenty areas (Tr. 267–68).  She found Plaintiff "not significantly limited" in eighteen areas and only "moderately limited" in two areas related to social interaction (*id.*).

A second agency psychologist, James L. Meyers, completed a PRTF and Mental RFCA on January 17, 2008 (Tr. 279–96).  He, too, found that Plaintiff had major depressive disorder,

---

[8] GAF is the overall level at which an individual functions, including social, occupational, academic, and other areas of personal performance.  American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 30–32 (4th ed. 1994).  It may be expressed as a numerical score. *Id.* at 32.  A score between 51 and 60 reflects moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning  (e.g., few friends, conflicts with peers or co-workers).  *Id.*

[9] Dr. Duffy noted that at the time of his examination Plaintiff's initial claim for workers' compensation ("WC") benefits had been denied, and he was involved in a WC lawsuit and had an attorney (Tr. 251).  Dr. Duffy went on to state, in the context of discussing Plaintiff's prognosis, "Of course, sometimes open Worker's compensation or litigation cases add stress and prolonged pain difficulties." (Tr. 252).

moderate, without psychosis, but it did not meet the criteria of Listing 12.04 (Tr. 279, 282).  He assessed mild to moderate functional limitations, with no episodes of decompensation (Tr. 289).  On the Mental RFCA, he found Plaintiff "not significantly limited" in seventeen of the twenty areas rated, and only "moderately limited" in one area related to understanding and memory and two areas related to sustained concentration and persistence (Tr. 293–94).

V.      DISCUSSION

Plaintiff raises four issues in this appeal, which the undersigned considers in the order that follows.  Plaintiff contends the ALJ erred by failing to conclude that he suffers from severe mental impairments, in discrediting Plaintiff's subjective complaints, in evaluating Dr. Garg's opinions, and in concluding that Plaintiff could perform light work (Doc. 12).

A.      Severity Findings

Plaintiff asserts the ALJ erred at step two of the sequential evaluation by failing to conclude that his depression and anxiety are severe impairments (Doc. 12 at 10–13).

At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments, that have lasted (or must be expected to last) for a continuous period of at least twelve months, and which significantly limit his physical or mental ability to perform "basic work activities."  *See* 20 C.F.R. §§ 404.1509, 404.1520(c) 404.1521(a).  Basic work activities include mental functions such as understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting (as well as physical functions not at issue here). 20 C.F.R. § 404.1521(b).  An impairment can be considered non-severe "only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984); *see also* Bowen v. Yuckert, 482 U.S. 137, 153 (1987) ("The severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education and experience were taken into account").  Although the claimant carries the burden at step two, the burden is mild.  McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986) ( "Step two is a threshold inquiry.  It allows only

claims based on the most trivial impairments to be rejected.").  A claimant need only show that "[his] impairment is not so slight and its effect is not so minimal."  *Id.*

The regulations mandate specific procedures for evaluating mental impairments.  *See* 20 C.F.R. § 404.1520a and 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00 *et seq.*.  Listing 12.00 addresses various potentially disabling mental impairments and instructs that the listing for each impairment begins with a narrative statement describing the disorder.  Listing 12.00 then requires evaluation of two sets of criteria known as "Paragraph A" and "Paragraph B" criteria.  Paragraph A criteria relate to medical findings.  Paragraph B criteria address impairment-related functional limitations in four broad functional areas:  activities of daily living; social functioning; concentration, persistence and pace; and repeated episodes of decompensation (*see, e.g.*, Listing 12.00C).  Generally, a mental impairment is deemed non-severe at step two if the degree of limitation in the first three functional areas is "none" or "mild," and the degree of limitation in the fourth area is "none," "unless the evidence otherwise indicates that there is more than a minimal limitation in [a claimant's] ability to do basic work activities."  20 C.F.R. § 404.1520a(d)(1).

Here, in concluding that Plaintiff suffers from no severe mental impairment, the ALJ stated:

> The record includes reference to possible mental or emotional impairments.  Prior to the amended alleged onset date, a psychological evaluation indicated the claimant had some depression, but he has not been under the care of a mental health professional and the record does not suggest any ongoing limitations of functioning because of a mental or emotional impairment.  The claimant has not had a severe mental impairment since his amended alleged onset date.

(Tr. 22).

Plaintiff contends the ALJ erred because the record supports a contrary conclusion.  More specifically, Plaintiff points to evidence from Dr. Duffy, Dr. Judith Meyers, and Dr. James Meyers, as evidence establishing the severity of his mental impairment(s) (Doc. 12 at 10–11).  He also points to Dr. Garg's treatment notes, which—per Plaintiff—establish severity because they reflect diagnoses of anxiety and treatment for "depression/anxiety symptoms by prescribing medications, including Valium, since at least February of 2008" (*id.*).

Plaintiff's contention is unavailing.  Initially, although Drs. Duffy, Meyers, and Meyers assessed moderate major depressive disorder, without psychosis, a diagnosis alone is insufficient to establish severity.  *See, e.g.*, <u>Salles v. Comm'r. of Soc. Sec.</u>, 229 Fed. Appx. 140, 145 (3d Cir.

2007) (diagnoses alone, including diagnosis of depression, insufficient to establish severity at step two).  Plaintiff must present evidence demonstrating that the condition <u>significantly</u> limits his ability to do basic work activities or impairs his capacity to cope with the mental demands of working.  *See* 20 C.F.R. §§ 404.1520(c), 404.1521(a); *see also* <u>Ramirez v. Barnhart</u>, 372 F.3d 546, 550 (3d Cir. 2004); <u>Salles</u>, 229 Fed. Appx. at 145.  Plaintiff has presented no such evidence.  Second, the evidence from Drs. Duffy, Meyers, and Meyers concerns Plaintiff's condition prior to the date he alleges he became disabled.  Indeed, Dr. Duffy specifically noted that his opinions relate to Plaintiff's condition "at this time" (i.e., in or about September 2007).  Similarly, Judith Meyers noted that her opinions concern Plaintiff's condition at or through mid-October 2007 (Tr. 253, 267), and James Meyers noted that his opinions concern Plaintiff's condition at or through mid-January 2008 (Tr. 279, 293).  Thus, the evidence from these three psychologists, even if it is construed as establishing a severe mental impairment (a finding the undersigned does <u>not</u> make, considering that Plaintiff was gainfully employed at the time the psychologists rendered their opinions), does not establish a severe mental impairment during the time frame relevant to this appeal.

As to Dr. Garg, although he treated Plaintiff during the relevant time frame, he merely diagnosed "insomnia anxiety" and prescribed Valium.  His diagnosis and limited treatment are wholly insufficient to satisfy Plaintiff's burden of proof at step two.  As the ALJ noted, Plaintiff sought no specialized mental health treatment at any time, much less during the time frame relevant to this appeal, and Dr. Garg did not refer Plaintiff to a mental health specialist or impose any functional limitations as a result of Plaintiff's impairment.  *See, e.g.*, <u>Posey v. Astrue</u>, No. 3:07cv356/MCR/EMT, 2008 WL 4187003, at *11 (Sept. 5, 2008) (ALJ properly considered that claimant's treating physician imposed no specific functional limitations resulting from her impairments) (citing <u>Brown v. Chater</u>, 87 F.3d 963, 964–65 (8th Cir. 1996)).  Moreover, Plaintiff mainly sought treatment from Dr. Garg for physical conditions, not mental conditions, and Plaintiff himself reported during a consultative examination that he is primarily limited due to physical problems, not emotional problems.  Similarly, Plaintiff was directly asked by the ALJ to state the problems that prevent him from working; in response, Plaintiff testified he is unable to work due to his back condition, carpal tunnel syndrome, and benign positional vertigo (Tr. 409).  And in a Disability Report filed in connection with his claim, Plaintiff alleged disability due to herniated discs

at T7 and T8, a fracture at T10, a "compressed spine," and MRSA in the lower right leg (Tr. 124). On this record, the ALJ did not err in concluding that Plaintiff has no severe mental impairment.[10]

B.    ALJ's Credibility Finding

Plaintiff contends the ALJ erred in discounting his complaints of pain. In support, he largely asserts his complaints were substantiated by Dr. Garg's treatment notes and opinions and, therefore, his complaints should not have been rejected (Doc. 12 at 13–15).[11] Additionally, Plaintiff argues, his severe physical impairments (i.e., low back pain with radiculitis, neck pain, mild carpal tunnel syndrome of the right arm, and vertigo) are of such severity they can reasonably be expected to give rise to the degree of pain he alleges (id. at 15).

As this court is well aware, pain and other subjective complaints are treated by the Regulations as symptoms of disability. Title 20 C.F.R. § 404.1529 provides in part that the Commissioner will not find disability based on symptoms, including pain alone, ". . . unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce these symptoms." The Eleventh Circuit has articulated a three-part pain standard, sometimes referred to as the Hand test, as follows:

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

Hand v. Heckler, 761 F.2d 1545, 1548 (11th Cir. 1986) (originally adopting the three-part pain standard). The Eleventh Circuit continues to follow the Hand test. Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991); Ogranaja

---

[10] While the ALJ failed to analyze Plaintiff's mental condition in strict compliance with the Regulations, any error in her failing to do so is harmless because—as she correctly noted—there is essentially no relevant mental health evidence to analyze. The ALJ did consider the minimal relevant evidence that does exist, including the evidence from Dr. Garg, and she properly concluded that Plaintiff has no severe mental impairment. See, e.g., Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983) (the ALJ's decision will stand when an incorrect application of the regulations results in "harmless error," because the correct application would not contradict the ALJ's ultimate findings); Brueggemann v. Barnhart, 348 F.3d 689, 695 (8th Cir. 2003) (the harmless error inquiry involves determining "whether the ALJ would have reached the same decision denying benefits, even if he had followed the proper procedure . . . .").

[11] Plaintiff also contends the ALJ erred in rejecting Dr. Garg's opinions, a contention the undersigned rejects, as explained infra.

v. Comm'r of Soc. Sec., 186 Fed. Appx. 848, 2006 WL 1526062, at *3 (11th Cir. June 5, 2006) (quoting Wilson); Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1216 (11th Cir. 1991).

Underlying the Hand standard is the need for a credibility determination concerning a plaintiff's complaints. Those complaints are, after all, subjective. "[T]he ascertainment of the existence of an actual disability depend[s] on determining the truth and reliability of [a claimant's] complaints of subjective pain [or other symptom]." Scharlow v. Schweiker, 655 F.2d 645, 649 (5th Cir. Sept. 1981) (holding that the ALJ must resolve "the crucial subsidiary fact of the truthfulness of subjective symptoms and complaints").[12] People with objectively identical conditions can experience significantly different levels of pain, and pain is more readily treated in some than in others. "Reasonable minds may differ as to whether objective medical impairments could reasonably be expected to produce [the claimed symptom]. This determination is a question of fact which, like all factual findings by the [Commissioner], is subject only to limited review in the courts to ensure that the finding is supported by substantial evidence." Hand, 761 F.2d at 1548–49. It is within the ALJ's "realm of judging" to determine whether "the quantum of [symptoms a claimant] allege[s] [is] credible when considered in the light of other evidence." Arnold v. Heckler, 732 F.2d 881, 884 (11th Cir. 1984). The evidence as a whole, including the existence of corroborating objective proof or the lack thereof, and not just a physician's belief or the plaintiff's claims, is the basis for the ALJ's credibility determination.

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of his alleged symptoms, but his statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the RFC assessment (Tr. 25). In support, the ALJ referenced the following evidence of record: (1) Dr. Slobodian's opinion rendered in May 2007—after Plaintiff pulled his back in December 2005 and was assessed with acute strain but not restricted from work as a truck driver, after Plaintiff injured himself on the job in October 2006 and was assessed with back pain and temporarily

---

[12] Decisions of the United States Court of Appeals for the Fifth Circuit decided on or before September 30, 1981 are binding precedent in the Eleventh Circuit. Bonner v. Pritchard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

restricted to light work,[13] and <u>after</u> the January 2007 thoracic MRI that revealed a slight disc protrusion at T7-T8—that Plaintiff was able to perform light to medium work; (2) evidence establishing that Plaintiff engaged in substantial gainful employment through May 2008 (including before and after the got the MRSA infection in May 2007, which infection was essentially resolved by June 2007); (3) the unremarkable cervical MRI in August 2007 and essentially unremarkable ankle and lumbar MRIs in August 2008 and September 2009, respectively; (4) NCS, which revealed mild carpal tunnel syndrome that necessitated only minimal treatment (i.e., use of a wrist splint at night); and (5) conservative treatment for his musculoskeletal impairments and alleged pain (i.e., medications only)  (Tr. 22, 23).  As detailed in the summary of Plaintiff's medical history, *supra*, each of foregoing reasons articulated by the ALJ is fully supported by the record.

The ALJ also noted that Plaintiff's activities of daily living are inconsistent with his subjective complaints but consistent with the ALJ's overall finding that Plaintiff is capable of performing light work (*see* Tr. 24).  In pertinent part, the ALJ referenced Plaintiff's ability to care for care for his one-year-old child, prepare simple meals, and sweep (Tr. 24; *see also* Tr. 250–51 (reflecting Plaintiff's report that he drives, sweeps, cleans the house, takes care of the baby, and takes care of his grooming and hygiene)).  The ALJ properly considered Plaintiff's daily activities in evaluating his credibility, *see* <u>Moore v. Barnhart</u>, 405 F.3d 1208, 1212–13 (11th Cir. 2005) ("the ALJ [properly] questioned Moore's contentions that she could not . . . perform light work, in light of her ability to drive, provide childcare, bathe and care for herself, exercise, and perform housework"), as Plaintiff's activities were but one of several factors the ALJ considered.  *See* <u>Parker v. Bowen</u>, 793 F.2d 1177, 1180 (11th Cir. 1986) (if daily activities are to be considered, the ALJ must do so in the context of all of the evidence in the record).

---

[13] Plaintiff testified that the on-the-job accident in October 2006 resulted in a "compression fracture in [his] thoracic spine with a couple of . . . herniated disks" (Tr. 409), but—as previously noted—the thoracic MRI obtained in January 2007 revealed only a slight disc protrusion at T7-T8 with very slight effacement (*see* Tr. 152).  Although Dr. Garg's treatment notes include diagnoses of "mid back pain due to T10 compression fracture (MRI)," as Plaintiff notes (*see* Doc. 12 at 14 (*citing, e.g.*, Tr. 353–74)), the undersigned has found no MRI in the file documenting a compression fracture at T10, and Plaintiff has not identified any such MRI in the record.  As noted *supra*, a December 2006 <u>x-ray</u> revealed mild anterior wedging at T10, but no compression fracture (*see* Tr. 153), and the radiologist who reviewed the subsequently-obtained thoracic <u>MRI</u> made no mention of any abnormality at T10 (*see* Tr. 152).  Thus, the basis for Plaintiff's reported compression fracture at T10 and Dr. Garg's related diagnosis is unclear.

Continuing, the ALJ noted that Plaintiff initially alleged disability beginning October 6, 2006, after injuring himself on the job, but he continued to work after October 2006 and worked in positions that "required light, or greater, physical efforts" (Tr. 24). Indeed, Plaintiff testified that he worked from "2005 to 2006" as truck driver for a grocery supply company, from "2006 to 2007" as a "master insulation" [sic], and through May 2008 as an "insulation apprentice," which latter position entailed cleaning and sweeping job sites (*see* Tr. 404–05). The Vocational Expert ("VE") classified both the truck driver and apprentice positions as work performed at medium exertional levels, and she appears to have classified the master insulation position as work performed at a heavy exertional level (*see* Tr. 416–17). Thus, it is clear that the jobs Plaintiff performed in 2007 and 2008, after his injuries, required greater physical exertion than the RFC determined by the ALJ. Moreover, although Plaintiff amended his onset date to May 18, 2008, the ALJ noted—and the record confirms—that Plaintiff's condition did not worsen following the October 2006 on-the-job injury, after which Plaintiff was released to light to medium work by Drs. Spruce and Slobodian (*see* Tr. 24). Thus, the record supports a finding that Plaintiff is capable of performing, at the very least, work at a light exertional level from May 18, 2008, forward.

Finally, the ALJ noted that Dr. Garg's opinions on the Physical Capacities Evaluation are generally consistent with a finding that Plaintiff can perform light work; that other than the NCS, which revealed mild carpal tunnel syndrome, Plaintiff was not referred for specialized treatment; and, the ALJ reiterated, all x-rays and MRIs resulted in minimal findings (*see* Tr. 24). Again, each of these reasons cited by the ALJ is well supported by the record.

It is within the ALJ's discretion to determine that a plaintiff's claims of pain and other symptoms are not credible. *See* Holt, 921 F.2d at 1223. "But the ALJ's discretionary power to determine the credibility of testimony is limited by [her] obligation to place on the record explicit and adequate reasons for rejecting that testimony." *Id.* Here, the ALJ complied with her obligation, and the reasons she placed on the record are supported by substantial evidence on the record as a whole. Plaintiff, therefore, is not entitled to relief on this claim.

C.     ALJ's Evaluation of Dr. Garg's Opinions

Plaintiff contends that the ALJ erred in rejecting the opinions of Dr. Garg, as contained on the Clinical Assessment of Pain form ("CAP") (i.e., that Plaintiff's pain is present to such an extent as to be distracting to the adequate performance of work activities, and the side effects of Plaintiff's

medication can be expected to be severe and limit Plaintiff's effectiveness due to distraction, inattention, drowsiness, etc.).

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  *See* Lewis v. Callahan, 125 F.3d 1436, 1439–41 (11th Cir. 1997); Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991); Sabo v. Chater, 955 F. Supp. 1456, 1462 (M.D. Fla. 1996); 20 C.F.R. § 404.1527(d).  "'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."  Phillips v. Barnhart, 357 F.3d 1232, 1240–41 (11th Cir. 2004) (citation omitted).  The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.  *See* Edwards, 937 F.2d 580 (finding that the ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements).

Here, in discounting Dr. Garg's opinions on the CAP, the ALJ found that the opinions are inconsistent with Dr. Garg's treatment records, other evidence in the file, and Dr. Garg's opinions on the Physical Capacities Evaluation ("PCE") (Tr. 23, 25).  Again, the ALJ's findings are well supported by the record.

Initially, the undersigned has found no indication in Dr. Garg's treatment records that Plaintiff complained of severe, disabling, or otherwise problematic medication side effects, and in his brief before this court Plaintiff has referenced no such complaints in the record.[14]  Although Plaintiff testified that his medications "put him to sleep," and he reported on a pain questionnaire that his medications cause a "loss of concentration" and other side effects (*see* Tr. 92, 411), Dr. Garg's records do not reflect such complaints.[15]  Thus, as the ALJ found, Dr. Garg's treatment records do not substantiate his opinion on the CAP regarding disabling medication side effects.

_____

[14] In this court's scheduling order, issued April 11, 2011, Plaintiff was specifically warned that, "Failure by either party to support factual contentions with accurate, precise citations to the record will result in the contention(s) being disregarded for lack of proper development." (Doc. 11 at 2) (emphasis in original).

[15] At Plaintiff's hearing before the ALJ his attorney specifically asked him if his medications affect his concentration, and Plaintiff testified that they do not (Tr. 415).  Plaintiff's testimony, therefore, contradicts his report on the pain questionnaire in at least one significant respect.

Moreover, even if Plaintiff's medications cause some side effects, it is clear they do not cause side effects to the extent suggested by Dr. Garg. The record establishes that through mid-May 2008, while Plaintiff was gainfully employed, Dr. Garg prescribed numerous medications, including Vicodin, Tylenol #3, Darvocet, Ambien, Lortab, and Valium (*see* Tr. 247, 244, 242, 241, 315, 311). The record also establishes that Dr. Garg prescribed the same medications after mid-May 2008, Plaintiff's amended disability onset date (*see, e.g.*, Tr. 333–39 (Davocet, Valium), Tr. 340 (Tylenol #3, Valium), Tr. 354, 356 (Lortab, Vailium, Ambien, and/or Darvocet)). It is therefore obvious that the side effects of Plaintiff's medication did not prevent him from working, and would not be expected to be severe or limit Plaintiff's effectiveness at work due to distraction, inattention, or drowsiness, as Dr. Garg opined.

Dr. Garg's other opinion on the CAP, that Plaintiff's pain is present to such an extent as to be distracting to the adequate performance of work activities, is likewise unsupported by the record. For example, Dr. Garg imposed no functional restrictions or otherwise indicated that Plaintiff is unable to work due to pain. *See* Young v. Apfel, 221 F.3d 1065, 1069 (8th Cir. 2000) (citing Brown, 87 F.3d at 964–65 (lack of significant restrictions imposed by treating physicians supported the ALJ's decision of no disability)); Posey, 2008 WL at 4187003; *see also* Singleton v. Astrue, 542 F. Supp. 2d 367, 378–79 (D. Del. 2008) (in evaluating a plaintiff's credibility, ALJ did not err in considering, among other factors, that "none of [p]laintiff's treating physicians identified any specific functional limitations arising from her fibromyalgia or other conditions that would render her totally disabled"). Further, the reasons cited by the ALJ for discounting Plaintiff's complaints of disabling pain, detailed *supra* (i.e., Dr. Slobodian's opinion, unremarkable x-rays and MRIs, and Plaintiff's daily activities, ability to work after both injuries, and conservative and non-specialized treatment), also support her finding that Dr. Garg's opinions are inconsistent with the record as a whole.

Finally, the ALJ's finding that Dr. Garg's opinions on the CAP are inconsistent with his opinions on the PCE, is also well supported. As previously noted, the opinions on the PCE suggest that Plaintiff is capable of performing light work (e.g., Dr. Garg opined on the PCE that Plaintiff can lift/carry twenty-five pounds, stand/walk two hours at a time and four hours in a workday, and bend, squat, climb, and reach).

Plaintiff argues, however, that Dr. Garg's treatment records substantiate his opinion regarding Plaintiff's pain. In support, Plaintiff points to numerous entries in Dr. Garg's records diagnosing low back pain and neck pain, and noting decreased motion secondary to pain (*see* Doc. 12 at 14), but Plaintiff's argument is unavailing. It is evident that Dr. Garg's diagnoses are based on Plaintiff's subjective complaints of pain, since all objective tests and physical examinations were either deemed unremarkable or revealed only minimal findings, but the ALJ properly discounted Plaintiff's complaints of disabling pain. Thus, Dr. Garg's diagnoses, while arguably reflecting his belief in the veracity of Plaintiff's complaints, do not undermine the ALJ's findings regarding Dr. Garg's opinions on the CAP. *See* Hand, 761 F.2d at 1548–49 ("Reasonable minds may differ as to whether objective medical impairments could reasonably be expected to produce [the claimed] pain. This determination is a question of fact which, like all factual findings by the [Commissioner], is subject only to limited review in the courts . . . ." ); *see also* Woolf v. Shalala, 3 F.3d 1210, 1214 (8th Cir. 1993) (conclusory statement of disability based on claimant's subjective complaints of pain entitled to little weight when unsupported by objective medical evidence). Stated another way, although Dr. Garg may have believed Plaintiff, the ALJ was not required to do so.

In sum, the ALJ clearly articulated her reasons for rejecting Dr. Garg's conclusory opinions on the CAP, and the reasons she stated are supported by substantial record evidence. Plaintiff, therefore, is not entitled to reversal on this ground.

D.      Plaintiff's Ability to Perform Light Work

As Plaintiff's final claim for relief, he contends the ALJ erred in determining he can perform light work. In support, Plaintiff asserts that the ALJ assigned significant weight to the opinions of Dr. Garg on the PCE as to Plaintiff's "lifting, carrying, sitting, standing and walking capacities," but if those opinions are fully credited they establish that Plaintiff can work a total of only seven hours in a workday, not eight, and Plaintiff would therefore be disabled (*see* Doc. 12 at 5, 8; Tr. 23, 25).

Before addressing Plaintiff's claim, it is important to note the testimony of the VE. At Plaintiff's hearing, the ALJ posed a hypothetical question to the VE, which asked her to assume an individual with Plaintiff's age, education, and work experience, who could lift twenty pounds occasionally, ten pounds frequently, and five pounds continuously; sit three to four hours in an eight-hour workday; and stand and walk a total of four hours in an eight-hour workday, but would

need to alter his positioning every two hours <u>or</u> every hour <u>or</u> even as often as needed as long as the individual did not abandon his workstation (*see* Tr. 417–18). In response, the VE testified that the hypothetical individual could perform Plaintiff's past work as a warehouse manager and shipping order clerk, noting in relevant part that these positions are performed at a light exertional level (*id.*). The ALJ relied upon the VE's response in finding Plaintiff "not disabled."

Thus, a minor discrepancy between the opinions on the PCE and the ALJ's hypothetical question exists, that is, Dr. Garg stated on the PCE that Plaintiff can sit two hours at a time and three hours total in an eight-hour workday, but the hypothetical question stated that the individual can sit "three to four" hours total. This minor discrepancy—that Plaintiff can sit up to four hours total in a workday instead of three—does not entitle Plaintiff to relief. Initially, the ALJ specified in the hypothetical question (and in the RFC determination) that the person must have an ability to change positions every two hours (Tr. 22). This specification adequately compensates for the minor "sitting" discrepancy, especially considering that Dr. Garg did <u>not</u> opine that Plaintiff would need to change positions every two hours, but the ALJ added this restriction nevertheless, and the VE testified that the individual could actually change positions more frequently. Furthermore, the ALJ gave Plaintiff's counsel an opportunity to question the VE after the hypothetical questioning, but counsel declined to do so (*see* Tr. 418). Counsel's failure to question the VE or seek clarification from her suggests, as the undersigned concludes here, that the discrepancy was in actuality a distinction without a difference.

Moreover, the ALJ's hypothetical question included additional limitations that were more restrictive than those assessed by Dr. Garg on the PCE. For example, Dr. Garg stated Plaintiff could occasionally lift twenty-five pounds, but the ALJ limited the hypothetical individual to twenty pounds. Additionally, the ALJ noted—as the undersigned detailed *supra*—that Dr. Garg provided inconsistent responses on the PCE and did not respond to all of its questions. For example, the ALJ pointed out that Dr. Garg opined that Plaintiff was both "mildly" and "totally" limited with regard to exposure to temperature extremes, and Dr. Garg failed to answer the question regarding Plaintiff's ability to drive (Tr. 23; *see also* n.6, n.7, *supra*, & attached PCE). Thus, although the ALJ assigned significant weight to certain opinions on the PCE, she could not assign such weight to all of the opinions because some are internally inconsistent or incomplete. Some are also unsupported by the

record and were rejected by the ALJ on this basis.  To illustrate, the ALJ noted that the "mild carpal tunnel syndrome documented in the record" does not support Dr. Garg's restriction regarding Plaintiff's use of the right hand, and "nothing of record supports [Dr. Garg's] limiting [Plaintiff's] ability to use his lower extremities," since the ankle MRI was essentially negative (*see* Tr. 25).

Thus, the ALJ thoroughly considered the opinions on the PCE, she assigned significant weight to those opinions that were supported by the record, she properly rejected those that were unsupported by the record or internally inconsistent, and she presented those limitations she found credible to the VE and relied on the VE's testimony to reach her ultimate conclusions.  For all these reasons, the ALJ did not err in evaluating the opinions of Dr. Garg, and her findings as to Plaintiff's RFC and ability to return to his past relevant work are fully supported by the record, despite the minor discrepancy.

VI.     CONCLUSION

For the foregoing reasons, the Commissioner's decision is supported by substantial evidence and should not be disturbed.  42 U.S.C. § 405(g); Lewis, 125 F. 3d at 1439; Foote, 67 F.3d at1560. Furthermore, Plaintiff has failed to show that the ALJ applied improper legal standards, erred in making his findings, or that any other ground for reversal exists.

Accordingly, it is respectfully **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**, that this action be **DISMISSED,** and that the clerk be directed to close the file.

At Pensacola, Florida this 13th day of February 2012.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


**<u>NOTICE TO THE PARTIES</u>**

**Any objections to these proposed recommendations must be filed within fourteen (14) days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**